UNITED STATES v. ST. LOUIS, I. M. & S. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1910.)

No. 2,960.

CARRIERS (§ 211*)—TWENTY-EIGHT HOUR LAW—EQUIPMENT OF STOCK PENS.

The 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1909, p. 1178]) does not require a carrier to maintain any particular kind of equipment of its stock pens, permanent or otherwise, except in so far as to render them suitable for the humane purpose of properly feeding, watering, and resting the particular shipment of stock unloaded into them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. § 211.*]

In Error to the District Court of the United States for the Eastern District of Arkansas.

Action by the United States against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

William G. Whipple and Powell Clayton, for plaintiff in error.

E. B. Kinsworthy and Lewis Rhoton, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and McPHERSON, District Judge.

ADAMS, Circuit Judge. This was a suit to recover a penalty imposed by section 3 of the act of June 29, 1906 (34 Stat. 608, c. 3591 [U. S. Comp. St. Supp. 1909, p. 1179]), known as the "Twenty-Eight Hour Law." The United States charged in its complaint that the defendant railway company at a certain time and place failed to unload a shipment of cattle and sheep in a humane manner into properly equipped pens for rest, water, and feeding, as required by the act. The trial below resulted in a judgment for the defendant, from which the United States prosecutes error.

The agreed facts upon which the case was submitted conclusively show that the stock was unloaded within the time prescribed by the act, driven in a humane manner into pens conveniently located, fed with good and wholesome hay, watered with fresh and wholesome water, and kept there for more than five hours. The pens were located on high level ground, which at the time in question was perfectly dry. The hay was eaten from the dry ground, upon which it had been thrown, and the water was drunk from clean tubs temporarily placed within the inclosures. In the language of the agreed facts, "on this particular occasion the car load of cattle and sheep were properly fed and watered." The only complaint is that no permanent hayracks or water troughs were in the pens from which the stock could eat and drink. We think this complaint is without any merit. No penalty is imposed by the act, except for individual violation of its provisions. It contains no provision requiring the carrier to maintain any particular kind of equipment of its stock pens, permanent or otherwise. The condition of the pens seems to have concerned Congress in making the enactment so far, and so far only, as it served the dominant and hu-

mane purpose of properly feeding, watering, and resting the stock. The equipment of the pens must be such, and need be only such, as serves that purpose at the time the stock is unloaded into them.

The judgment is affirmed.